# IN THE COURT OF APPEALS OF IOWA

No. 23-0759
Filed August 30, 2023

**IN THE INTEREST OF K.R., N.R., A.R., and J.R.,**
**Minor Children,**

**A.K., Mother,**
    Appellant,

**K.R., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Polk County, Susan Cox, District Associate Judge.

A mother and father separately appeal the modification of a dispositional order transferring placement of their children. **AFFIRMED ON BOTH APPEALS.**

Sonia M. Elossais of Carr Law Firm, P.L.C., Des Moines, for appellant mother.

David Barajas of Macro & Kozlowski, LLP, West Des Moines, for appellant father.

Brenna Bird, Attorney General, and Mary A. Triick (until withdrawal) and Mackenzie Moran, Assistant Attorneys General, for appellee State.

Elizabeth Hadwiger of Youth Law Center, Des Moines, attorney and guardian ad litem for minor children.

Considered by Greer, P.J., and Schumacher and Badding, JJ.

**BADDING, Judge.**

"Addiction is the disease of deceit," the juvenile court said in modifying a dispositional order to transfer placement of four children from their maternal grandmother to foster care under Iowa Code section 232.103(4) (2023), and "unfortunately . . . the grandmother has repeatedly been deceitful to professionals and to the [c]ourt." The parents appeal,[1] claiming the children should have been allowed to stay with the grandmother. On our de novo review of the record,[2] we affirm on both appeals.

I.      **Background Facts and Proceedings**

In October 2022, the Iowa Department of Health and Human Services received a report that the mother and father were using methamphetamine while caring for their four children—with the oldest born in 2014, twins born in 2015, and the youngest born in 2018. After denying any drug use and dragging their feet for a week, the parents submitted to sweat-patch tests. The mother had her patch removed after only three days because it was irritating her skin. Both parents' tests were positive for methamphetamine, with amphetamines also present.

Following these positive tests, the department requested hair drug screens for the children. Each child's test was positive for methamphetamine and amphetamines. Yet the parents continued to deny use, with no explanation for

---

[1] The mother filed an application for interlocutory appeal and request for stay from the juvenile court's modification order, while the father filed a petition on appeal. With these disparate filings before it, the supreme court entered an order finding the "modification order is a final order for purposes of appeal," treating the mother's application for interlocutory appeal as a notice of appeal, *see* Iowa R. App. P. 6.108, and denying her request for stay.

[2] *See In re K.B.*, 753 N.W.2d 14, 15 (Iowa 2008) (reviewing de novo an order modifying custody of a child in a child-in-need-of-assistance proceeding).

their children's positive results. As a result, the children were removed from the parents' custody in December and placed in relative care with their maternal grandmother.

The children were adjudicated in need of the court's assistance in January 2023. Before the adjudicatory hearing, the guardian ad litem reported the grandmother

> continues to struggle with the severity of Court Involvement and lacks insight into the parents', especially [the mother's], use of illegal substances. . . . [T]here are continued concerns that the department's instructions are not being followed. The undersigned is not asking for placement [to] be changed at this time but has serious concerns regarding long-term concurrent planning.

The guardian ad litem also requested protective daycare for the youngest child, which the court included in its adjudication order.

In a social history report filed before the dispositional hearing, the department noted that while the father had admitted to using methamphetamine, the mother "continues to state she hasn't used methamphetamine and that she won't admit to something she hasn't done despite the positive test." The report stated the grandmother still supported the mother in her denials of drug use, which led the department to question her ability to protect the children. The department accordingly recommended that the grandmother attend "some Nar-Anon classes to learn the signs of use so she can . . . recognize the signs in the future." The court adopted that recommendation in its dispositional order, which continued the children in the temporary legal custody of the department and in relative care. The children remained with their grandmother.

In April, the State moved to modify the children's placement because of "concerns and issues" regarding the grandmother's "boundaries with the parents, protective capacities, minimizing the parents use, and/or denying the parents use." The motion also alleged the youngest child was not yet in daycare "despite it being ordered since January." The court granted the parents' motion to stay the requested modification pending the hearing the next day.

At that hearing, the State asked the grandmother, "What do you believe the concerns are with the parents?" She responded, "[A]s far as I know, they have been doing everything that they are supposed to be doing." The grandmother refused to believe the mother was using drugs, testifying, "My daughter told me she didn't, and I believe her." She explained that she had done some research online "and it said in there that it is possible that secondhand contamination could possibly make you have a bad patch." Despite being told by professionals that was not accurate, the grandmother testified that the mother and children tested positive from the father "doing it in the home, him touching them, them sleeping together." When asked whether she would report the parents to the department if she suspected they were using methamphetamine, the grandmother answered, "I don't know if I would do that." As far as the Nar-Anon classes, while the grandmother had attended a few, she did not believe they were helpful. And when questioned about why the youngest was not in daycare, the grandmother testified, "we have been trying. . . . [B]ut it's been hard." But after the court took a ten-minute break for the grandmother to call a daycare, she found a spot for him the next week.

The father then testified at the court's direction, admitting that he had used methamphetamine "a lot." When pressed, he acknowledged that he started using it more than two years ago, with daily use for the past year. The father testified that he would typically use the drug in the family's basement but he sometimes also used it in the garage or his bedroom. He testified the mother did not use methamphetamine, although she would question him about the smell in the basement. The father "would tell her it's probably a dead mouse," or he "would hurry up and light up a cigarette."

The court continued the hearing for two weeks, setting clear expectations for the parents and grandmother in the meantime, including starting the youngest child in daycare. After the hearing, the social worker assigned to the case made an unannounced visit to the grandmother's home. There was a vehicle outside that the worker did not recognize, which was "kind of alarming" to her. She knocked on the door, and the grandmother answered. The children were playing out back. The worker asked the grandmother about the vehicle, and she said that it belonged to her boyfriend, who was working on building a gazebo in the back where the children were. The grandmother attempted to introduce the worker, but the boyfriend "made a face and walked away." The worker, who had been involved with the case since the beginning, testified the grandmother had never mentioned having a boyfriend. The grandmother said that was because she was never asked and "that she thought we had already known." She gave the worker her boyfriend's name and, after some hesitation, his date of birth for a background check. Turns out, the boyfriend had old drug and domestic-violence charges. He was asked to provide a drug test but never complied.

With this new information, the State renewed its motion to modify the children's placement before the continued hearing. The court granted that request, and the children were placed in two different foster homes located close together. At the continued hearing, the grandmother testified that she had been in a thirteen-year relationship with her boyfriend, but they broke up soon after the children came to live with her. She said he "[v]ery seldom" came to her house, though immediately after saying that, she testified he was there "[m]aybe a couple times a week."

In a written order after the hearing, the court found the dispositional order should be modified under Iowa Code section 232.103(4)(b) and (c):

> Despite intensive services and incredible patience by [the department], the grandmother has repeatedly demonstrated she cannot/will not honestly work with providers and safely care for the children. The court is extremely [concerned] by the grandmother's repeated deceit given a concerning history of intergenerational substance abuse which includes the maternal grandfather dying from a drug overdose and the mother's 13 year paramour refusing to comply with drug testing requests. Addiction is the disease of deceit.

The mother and father both appeal.

## II.      Analysis

Iowa Code section 232.103(4) allows the juvenile court to modify a dispositional order under certain circumstances, including where the "purpose of the order cannot reasonably be accomplished" or where the "efforts made to effect the purposes of the order have been unsuccessful and other options to effect the

purposes of the order are not available."[3]  Iowa Code § 232.103(4)(b), (c).  Both grounds have been met here.

The purpose of the dispositional order was to protect the children from the parents' drug use in the least restrictive placement, with the "primary permanency goal" identified as reunification.  *See id.* § 232.102; *see also In re D.D.*, 955 N.W.2d 186, 192 (Iowa 2021) (stating the purpose of a dispositional order later terminated by the juvenile court under section 232.103(4) "was to protect the children from further continued sexual assault by the stepfather in the home").  We agree with the juvenile court that purpose could not reasonably be accomplished with the children in the grandmother's care.  *See* Iowa Code § 232.103(4)(b).  The grandmother clearly testified that she did not believe the mother had used methamphetamine, despite the positive tests otherwise.  *See D.D.*, 955 N.W.2d at 192 ("It's folly to think the mother will stand sentinel to protect against a foe she doesn't acknowledge exists.").  She also testified that she was unsure whether she

---

[3] Citing our opinion in *In re A.J.*, the parents each assert the juvenile court did not apply the correct standard in modifying the children's placement because it did not consider whether the requirements of section 232.102(4) had also been met. No. 16-1954, 2017 WL 1278366 (Iowa Ct. App. Apr. 5, 2017).  We agree with the juvenile court that the two-step analysis in *A.J.*, which concerned modification of a dispositional order to transfer legal custody from a parent to the department, does not apply since the State was not asking for the children's *custody* to be transferred.  *Cf id.* at *3; *see also* Iowa Code § 232.102(4)(a) ("Whenever possible the court should permit the child to remain at home with the child's parent, guardian, or custodian. *Custody of the child should not be transferred unless. . . .*" (emphasis added)).  As the State points out, "both before and after modification, custody of the children has remained constant with the [d]epartment."  Instead, the State was seeking a change in the children's *placement*.  *See* Iowa Code § 232.102(1) (distinguishing between placement and custody).  We also observe that the juvenile court no longer needs to "find a substantial change in circumstances as a prerequisite to modification of a dispositional order pursuant to Iowa Code section 232.103(4)."  *In re M.M.*, No. 16-0548, 2016 WL 4036246, at *4 (Iowa Ct. App. July 27, 2016).

would report the parents to the department if she suspected they were using drugs. And while the grandmother had attended a few Nar-Anon classes to help her recognize the signs of substance abuse, she did not believe they were helpful.

Yet the parents each contend "that even if safety concerns existed while the children were in the grandmother's care, those concerns could have been addressed by means other than removal and placement in foster care," an argument that implicates section 232.103(4)(c). They do not specify what those other means would be—although in juvenile court, the mother's attorney contended the grandmother "would be willing to comply with any additional conditions this court may impose." The grandmother's actions before the modification request showed that was not true. *See In re B.H.A.*, 938 N.W.2d 227, 233 (Iowa 2020) (explaining we can look to past performance to predict future care).

The juvenile court ordered protective daycare for the youngest child in January 2023. The grandmother had not complied with that order by the modification hearing in April. Her testimony on the issue was suspect: "I said he doesn't need daycare because I'm watching him, but I wasn't meaning that he don't need to go to daycare." The court noted the efforts that had been made to avoid modifying the children's placement, telling the parents that even though

> [a]t the last hearing, I did not find the grandmother's testimony to be credible . . . I did put off the modification or removal because I was so worried about the kids, and I wanted to just try to work with this situation to not have additional trauma to the children. I was extremely concerned by the blatant disrespect and disobeying of a court order regarding daycare. But, again, I wanted to try and work with the family and avoid the disruption. . . .
> The grandmother's testimony today, again, was not truthful. I do not find her to be credible. . . .

> I am extremely concerned that the person that the Court and professionals need to trust for safety of the children has been repeatedly dishonest, has not provided [the department] with critical information to safeguard the children, and in my opinion, has been disruptive many times of the attempts of the parents to work with [the department] and for the focus to be on reunification.

With these facts, which we find supported by the record, we conclude that modification was also appropriate under section 232.103(4)(c). *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000) ("Although we are not bound by them, we give weight to the trial court's findings of fact, especially when considering credibility of witnesses.").

Finally, we recognize the "paramount consideration in child-in-need-of-assistance proceedings is protecting the best interests of the children." *D.D.*, 955 N.W.2d at 192. To that end, the parents argue "modifying placement from the maternal grandmother's care to separate foster homes is not in the children's best interests." We first observe that while the children were in two different foster homes, the caregivers in those homes lived close together and were related to one another. Second, we agree with the juvenile court that the safety concerns present in the grandmother's home meant placement with her was no longer in the children's best interests. *See In re J.E.*, 723 N.W.2d 793, 801 (Iowa 2006) (Cady, J., concurring specially) (noting children's "safety and the need for a permanent home" are the "primary concerns" in placing children). And third, as the court explained at the hearing, "[s]o much focus and energy has been spent on [the grandmother] and her environment that . . . it has taken away from the efforts of reunification and the focus on the children." *See In re A.J.*, No. 04-0429, 2004

WL 1252762, at *3 (Iowa Ct. App. June 9, 2004) (stating the "overwhelming bulk of the focus" must be "on the children and their needs").

For these reasons, we affirm the juvenile court's modification of the dispositional order to transfer placement of the children from relative care to foster care under Iowa Code section 232.103(4).

**AFFIRMED ON BOTH APPEALS.**